**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**MONROE DIVISION**

| | |
|---|---|
| **KENNETH R. PLEASANT** | **CIV. ACTION NO. 3:25-01369** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **FRANK J. BISIGNANO, COMMISSIONER, U.S. SOCIAL SECURITY ADMINISTRATION** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

## REPORT AND RECOMMENDATION

Before the Court is Plaintiff's petition for review of the Commissioner's denial of social security disability benefits. The District Court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons assigned below, it is recommended that the decision of the Commissioner be **AFFIRMED**, and this matter be **DISMISSED WITH PREJUDICE**.

## Background & Procedural History

Plaintiff Kenneth R. Pleasant ("Pleasant") filed the instant application for Title II disability insurance benefits on September 6, 2023. (Tr. 143-149). Pleasant, who was 54 years and 10 months old as of the date he last was insured for benefits, i.e., December 31, 2017, alleged a disability onset date beginning on December 31, 2012, because of cranial nerve disorder, traumatic brain injury, zygomatic arch fracture, hearing issues, PTSD, depression, anxiety, visual impairment, tinnitus, vertigo, headaches, high blood pressure, arthritis, his back, and his hands. (Tr. 42, 197, 201). The state agency denied the claim initially on July 9, 2024, and again upon reconsideration on September 19, 2024. (Tr. 41, 49, 57-60, 64-66). Thereafter, Pleasant requested and received a May 23, 2025 hearing before an Administrative Law Judge ("ALJ"). (Tr. 28-40). However, in a May 30, 2025 written decision, the ALJ determined that

Pleasant was not disabled under the Social Security Act, finding at step five of the sequential evaluation process that he was able to make an adjustment to work that exists in significant numbers in the national economy. (Tr. 11-19).

Pleasant sought review of the adverse decision before the Appeals Council. On August 7, 2025, however, the Appeals Council denied his request for review; thus, the ALJ's decision became the final decision of the Commissioner. (Tr. 1-3).

On September 12, 2025, Pleasant filed the instant, *pro se* complaint for judicial review of the Commissioner's final decision. Following submission of the administrative transcript and supporting memoranda, the matter is now before the court.

**Standard of Review**

This court's standard of review is (1) whether the final decision is supported by substantial evidence, and (2) whether the Commissioner applied the proper legal standards to evaluate the evidence. *Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021) (citation omitted). The Supreme Court has emphasized that

> [t]he phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Biestek v. Berryhill*, 587 U.S. 97, 102-103 (2019) (internal citations omitted). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

Upon finding substantial evidence, the court may only review whether the Commissioner

has applied proper legal standards and conducted the proceedings consistently with the statute and regulations. *Carter v. Heckler*, 712 F.2d 137, 140 (5th Cir. 1983). In other words, where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed – *unless* the Commissioner applied an incorrect legal standard that materially influenced the decision. *See* 42 U.S.C. § 405; *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000); *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).

**Determination of Disability**

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . ." 42 U.S.C. § 423(d)(1)(A). A disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C.§ 423(d)(2)(A).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows,

(1) An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2) An individual will be found not disabled if he or she does not have a "severe impairment," or a combination of impairments that is severe, and of the requisite duration.

(3) An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1], and meets the duration requirement, will be considered disabled without the consideration of vocational factors.

Before proceeding to step four, the Commissioner assesses the individual's residual functional capacity, which is used at both step four and step five to evaluate the claim.

(4) If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

(5) If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy. If the individual can make such an adjustment, then he or she will be found not disabled. If the individual is unable to adjust to other work, then he or she will be found disabled.

*See Boyd*, 239 F.3d at 704 -705; 20 C.F.R. §§ 404.1520, 416.920.

When a finding of "disabled" or "not disabled" may be made at any step, a decision will be rendered at that point without proceeding to the remaining steps. 20 C.F.R. §§ 404.1520, 416.920; *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). "The claimant bears the burden of proof on the first four steps, but the Commissioner bears the burden on the fifth step." *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (citation omitted).

## **The ALJ's Findings**

### I. Steps One, Two, and Three

The ALJ determined at step one of the sequential evaluation process that the claimant did

not engage in substantial gainful activity during the relevant period, which extended from his alleged onset date of December 31, 2012, through the date he last was insured for benefits on December 31, 2017. (Tr. 13). At step two, he found that, through the date last insured, the claimant suffered severe impairments of degenerative disk disease of the lumbar spine, obesity, hypertension, prediabetes, bilateral hand arthritis, major depressive disorder, and post-traumatic stress disorder ("PTSD"). (Tr. 13-15).[1] He concluded, however, that the impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at step three of the process. *Id*.

**II. Residual Functional Capacity**

The ALJ next determined that the claimant retained the residual functional capacity ("RFC") to perform a range of light work,[2] "except understand, carry out, and remember simple instructions, make judgments that are commensurate with the functions of unskilled work (i.e., simple work-related decisions), respond appropriately to supervision, coworkers, and work

---

[1] The ALJ determined that the claimant's medically determinable impairments of cranial nerve disorder, zygomatic arch fracture, tinnitus, visual impairment, vertigo, headaches, chronic kidney disease, and hyperlipidemia were non-severe. *Id*.

[2] Light work entails:

> . . . lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b).

situations, deal with changes in a routine work setting with no more than incidental contact with the public." (Tr. 15-17).

### III. Steps Four and Five

The ALJ determined at step four of the sequential evaluation process that the claimant had no past relevant work. (Tr. 17-18). Accordingly, he proceeded to step five. At this step, the ALJ determined that, on the date he was last insured, the claimant was considered a "younger" individual with at least a high school education. *Id.* Transferability of skills was not material to the decision. *Id*.

The ALJ next observed that, given the claimant's vocational factors, and if he had an RFC that did not include any non-exertional limitations, then the Medical-Vocational Guidelines would direct a finding of not disabled. 20 C.F.R. §§ 404.1569, 416.969; Table 2, Rules 202.20 and 202.13, Appendix 2, Subpart P, Regulations No. 4; Tr. 18. However, because the claimant's RFC *did* include non-exertional limitations, the ALJ consulted a vocational expert ("VE") to determine whether, and to what extent the additional limitations eroded the occupational base for work. *Id*. In response, the VE identified the representative jobs of housekeeper, *Dictionary of Occupational Titles* ("DOT") Code # 323.687-014, and fast-food worker, DOT Code # 311.472-010. (Tr. 18, 39).[3]

## Analysis

Pursuant to the Court's scheduling order, Pleasant was required to submit a brief that,

[3] The VE responded that for the housekeeper and fast-food worker jobs there were 590,000 and 790,000 positions available nationwide, respectively. (Tr. 18, 39). This incidence of work constitutes a significant number (and range) of jobs in the "national economy." 42 U.S.C. § 423(d)(2)(A); *Johnson v. Chater*, 108 F.3d 178, 181 (8th Cir. 1997) (200 jobs at state level and 10,000 nationally, constitute a significant number).

*inter alia*, set forth "**specific errors** committed at the administrative level which entitle [him] to relief." (Sept. 16, 2025 Sched. Order [doc. # 4]). The order cautioned that, "[t]he court will consider only those errors **specifically identified** in the briefs. A general allegation that the ALJ's findings are unsupported by substantial evidence, standing alone, is insufficient to invoke the appellate function of the federal court." *Id*.

On December 12, 2025, Pleasant submitted a "legal brief," which set forth fourteen "questions," ostensibly for the Commissioner. (Pl. Brief [doc. # 7). On January 12, 2026, the Commissioner filed his response to Pleasant's brief. (Comm.'r Response [doc. # 11]). On May 14, 2026, Pleasant obtained leave of court to file additional evidence consisting of the first page of a January 28, 2026 Rating Decision issued by the Department of Veterans Affairs (the "VA"), which granted Pleasant "[e]ntitlement to individual unemployability" effective May 25, 2023. [doc. # 15].

As stated above, Pleasant's brief is limited to questions for the Commissioner. While this submission technically is not compliant with the Court's scheduling order, given Pleasant's pro se status, the Court will consider and address each of his itemized questions as assignments of error. Before doing so, however, the Court pauses to address the grounds for the ALJ's decision.

At the outset, the Court **cannot stress enough that the relevant time period for this disability application spans the time from Pleasant's alleged disability onset date of December 31, 2012, through December 31, 2017, the date that he last was insured for benefits** (sometimes abbreviated to "DLI"). Therefore, to prove that he is entitled to Title II disability insurance benefits, Pleasant must establish disability by December 31, 2017. *See Knight v. Soc. Sec. Admin.*, Civ. Action No. 20-0825, 2021 WL 2404071, at *8 (E.D. La. May

26, 2021), *R&R adopted,* 2021 WL 2402208 (E.D. La. June 11, 2021) (citation omitted). "Medical evidence that is dated after the date last insured is relevant only to the extent that it might establish that the claimant was disabled as of the date last insured." *Id.*

The difficulty here is that virtually all of the medical evidence is dated 2019 and later, which, as the ALJ observed, is well after Pleasant's DLI in 2017. (Tr. 11). In fact, the ALJ remarked that he would have been justified in denying Pleasant's claim based on the lack of medically determinable impairments/insufficient evidence prior to his DLI. *Id*. In other words, the ALJ could, and arguably ***should***, have denied the claim at step two of the sequential evaluation process. Nonetheless, "in an effort to give the claimant every opportunity" the ALJ proceeded to evaluate the claim "as if the [DLI] had not expired," which ultimately yielded the same result. *Id*.

Pleasant contends that his disabilities started forty years ago on October 13, 1986, when he suffered a zygomatic arch facial depression injury while playing football in the military. *See* Tr. 286, 1191. Eleven years later, in July 1997, he separated from the military. (Tr. 286). He then served in the national guard for fifteen years until 2012, when he separated because of downsizing. (Tr. 1372). Pleasant recorded earnings through 2012, but none thereafter. (Tr. 155). While his earnings for many years did not exceed the presumptive amount to be deemed engaged in work at the substantial gainful activity ("SGA") level, his earnings did exceed the SGA presumptive minimums in 2005-2006 and 2010-2011. *See* Tr. 155 and https://www.ssa.gov/oact/cola/sga.html (last visited on Sept. 2, 2026).

The Court recognizes that the record contains a medical treatment note dated July 2, 1997, which shows that Pleasant had a history of right zygomatic arch injury that he was concerned about. (Tr. 174). However, he reported zero pain and had zero symptoms. *Id*.

Moreover, he had minimal depression, and his right sub-zygomatic arch was within normal limits. *Id*. In short, his examination was normal. *Id*.

The administrative record remains devoid of any medical treatment records during the relevant period, i.e., from 2012 through 2017. Instead, records reflect that, on March 6, 2019, Pleasant returned to the VA for the purpose of reestablishing primary care at the Monroe clinic after an *eight-year* absence. (Tr. 1239-1244). At that visit, Pleasant explained that "it's time for him to start taking care of himself as he is getting older and has more time available." *Id*. Pleasant reported no recent change in his past medical history. *Id*. He slept well but felt tired and wanted to take naps in the late afternoon or early evening. *Id*. He reported no recent disturbance of vision, no headaches, no shortness of breath, no new weakness, numbness or loss of consciousness, no significant joint aches and stiffness, and no excessive anxiety or depression. *Id*. He reported zero pain. (Tr. 600). At that time, he weighed 201 pounds and had a BMI of 29.7, which was rounded up to a BMI of 30 elsewhere in his chart. (Tr. 1239-1244, 600). Upon examination, his joints were unremarkable, with no limitation of motion; his gait was unremarkable. *Id*. His mood was normal; judgment, insight, recent memory, and remote memory were all good. *Id*. The nurse practitioner diagnosed elevated blood pressure, but without diagnosis of hypertension; hyperlipidemia; excess fatigue; and colon cancer screening. *Id*.

In other words, the medical treatment record/examination that is nearest temporally to the December 31, 2017 date by which Pleasant had to establish disability, shows that he had no impairment that would have caused a limitation of functioning more severe than that assigned by the ALJ. Furthermore, Pleasant told the nurse practitioner that there had been no recent changes in his past medical history, and, instead, he just felt like it was time to start taking care of

himself. (Tr. 1240).

Four months later, on July 19, 2019, Pleasant returned to the VA clinic for follow up with a chief complaint of wanting a mental health referral. (Tr. 566-567). When asked why he needed the referral, Pleasant "began telling a story from 1982 . . ." and then a 1987 football accident, from which he stated that "he knows he suffered a brain injury." *Id*.

Pleasant returned to the VA clinic in September 2019 seeking a mental health evaluation, so he could submit it to the "service connection [c]enter" to support his claim. (Tr. 556-560). He still reported no gait changes, no dizziness, no headaches, and no weakness. *Id*. Upon examination, he had a normal gait and no limitation of motion. *Id*. However, he complained of anxiety and compulsion symptoms. *Id*. He also self-reported symptoms consistent with anxiety and/or depression. (Tr. 553-556).

After a medical treatment hiatus lasting two and one-half years ("patient lost to follow up; last seen by primary care 2019"), Pleasant returned to the VA clinic on March 4, 2022, where he complained about pain in his right fifth finger, chronic back stiffness, and concerns about his history of an alleged traumatic brain injury ("TBI") that he related to his zygomatic arch injury while playing football in 1986. *See* Tr. 534, 539-542.

Over the ensuing years, Pleasant regularly sought care via the VA for an ever-increasing list of problems that he related to his old zygomatic arch injury and other service-connected impairments. After five years of increasing care, on October 28, 2024, the VA issued a decision that increased his disability rating from 70 percent to 100 percent as a result of his somatic symptom disorder with anxiety and depression (claimed as PTSD), with TBI. (Tr. 177-181). The decision noted that Pleasant's had a prior 70 percent disability rating, with an effective date of September 30, 2021. *Id*. Until that date, he had a combined disability rating of *zero percent*,

that was effective August 22, 2007. *Id*.

Upon consideration, it is manifest that the VA's disability decision reflects a worsening of Pleasant's condition and symptoms that began well after the December 31, 2017 date that he last was insured for SSA Title II benefits. In fact, all four non-examining SSA agency psychologists and physicians who reviewed Pleasant's file in July and/or September 2024 opined either that the medical record did not substantiate mental health diagnoses prior to the date he last was insured or there was insufficient evidence of disability relating to the date last insured. *See* Tr. 47-54. To be sure, the Court recognizes that Pleasant contends that his later-acquired diagnoses relate back to the relevant period at issue because he purportedly was experiencing those symptoms all along. However, this argument overlooks the fact that Pleasant did not seek treatment throughout the entirety of the relevant period. Moreover, when he finally reestablished treatment with the VA in March 2019, his symptoms were benign from a functional capacity perspective. Subsequently, and with a greater frequency beginning in 2022, Pleasant's impairments increased. However, no medical professional of record assigned Pleasant any limitation of functioning that is more restrictive than the ALJ's RFC.

Accordingly, the Court is compelled to find that, at minimum, the record contains substantial evidence to support the ALJ's decision that Pleasant's impairments were not disabling prior to the date he was last insured for benefits. With that backdrop, the Court will proceed to address Pleasant's assignments of error, framed as questions.

**1. Why didn't the SSA use the VA's document designating me as totally and permanent disabled in 2024?**

For disability claims, such as this one, that were filed on or after March 27, 2017, SSA regulations do not require ALJs to consider decisions of other government agencies because they are considered "evidence that is inherently neither valuable nor persuasive." 20 C.F.R. §

404.1520b(c)(1); *Kevin A. vs. Bisignano,* Civ. Action No. 25-3771, 2026 WL 2332600, at *8 (S.D. Tex. July 23, 2026), *R&R adopted,* 2026 WL 2329722 (S.D. Tex. Aug. 11, 2026). The SSA has stressed that decisions from other agencies, such as the VA, are based on their own rules, which are distinct from SSA disability rules. *See* 20 C.F.R. § 404.1504. Consequently, for claims filed on or after March 27, 2017, ALJs will not provide any analysis in their determinations or decisions about a decision made by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits. *Id*. Therefore, while an ALJ must consider the supporting evidence underlying the rating, he or she need not provide any analysis of the rating itself. *Id*.; *Owen v. Kijakazi*, No. 21-60545, 2022 WL 118427, at *2 (5th Cir. Jan. 11, 2022) (unpubl.). That is precisely what the ALJ did here. In any event, the VA decision did not address the years at issue in this determination.

2. **Why didn't the SSA use my designation as housebound to grant me SSDI?**

Again, Pleasant is relying on the VA's determination that he was "housebound" to propel a parallel outcome as to his SSA claim. However, the ALJ is relieved from discussing the "housebound" designation, not only because it was a determination made by another governmental agency, but also because it is a statement regarding an issue that is reserved to the Commissioner. *See* 20 C.F.R. § 404.1520b(c)(1) and (3). In other words, the Commissioner must make his own decision and cannot simply rely on the VA's decision.

3. **Why did a vocational expert appear at my May 23, 2025 Administrat[ive] Judges hearing when I was granted one hundred percent totally and permanent disability with housebound status, which gets to my unemployability?**

Again, Pleasant's question assumes that the VA's disability determination is relevant in

this case. It is not. *See* discussion, *supra*.

4. **Why did the ALJ use words like moderate and mild when describing my degree of impairment when the evidence said totally and permanent disabled with housebound status?**

The VA's disability determination is, again, irrelevant. *See* discussion, *supra*. During the relevant period of time for his Title II claim (2012-2017), Pleasant did not seek treatment or complain about any mental health issues. Accordingly, the ALJ correctly determined that any limitation of functioning from his alleged mental impairments was no worse than mild to moderate.

5. **Because of the lack of due diligence by the SSA, no exams, face to face meeting no telephone calls or anything else, the judge mistakenly found that I was obese. I'm not. Why did this happen?**

Pleasant contends that the ALJ incorrectly determined that he was obese. However, at his 2019 office visit that is nearest to his DLI, records reflect that he weighed 201 pounds, with a BMI of 29.7, which was rounded up to a body mass index ("BMI") of 30 elsewhere in his chart. (Tr. 1239-1244, 600). A BMI of 30.0 or above is considered obese. *See Social Security Rule 02-1p*, *Titles II and XVI: Evaluation of Obesity*, 2002 WL 34686281, at *2 (Sept. 12, 2002).

Regardless, any error was harmless because a finding of obesity ordinarily inures to the benefit of claimants, as the condition can reduce an individual's occupational base for work activity in combination with other ailments. *See Monroe v. Commissioner of Social Security Administration*, Civ. Action No. 25-1043, 2026 WL 2408354, at *8 (W.D. La. July 28, 2026), *R&R adopted*, 2026 WL 2403400 (W.D. La. Aug. 17, 2026) (citations omitted).[4]

[4] The medical treatment record reflects that Pleasant later lost weight. However, that was well outside the relevant period for the instant claim.

6. **I've not had SGI since my active duty time in the Army. The SSA reported that I earned $10,000 in 2012, I didn't, I earned just over $5,000.**

Pleasant's earnings records indicate that he earned $5,025.72 in 2012. (Tr. 155, 159-160). However, he earned over the SGA presumptive minimums in 2005-2006 and 2010-2011. *Id*. Regardless, the difference in his earning for 2012 does not affect the ALJ's determination that Pleasant was not disabled during that time.

7. **At the ALJ hearing, I mentioned my having hyperacusis, which is a severe mental health and hearing problem. Why wasn't this considered in the May 23rd hearing?**

The ALJ did not address Pleasant's alleged hyperacusis in his decision. Nonetheless, an ALJ's omission does not require remand unless it affected the claimant's substantial rights. *See Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). As the Commissioner pointed out in his brief, Pleasant was not referred for hyperacusis evaluation until June 29, 2023, or over five years after his DLI. *See* Tr. 377-378. Even then, Dr. Lee Miller found that Pleasant had but mild sensorineural hearing loss and he *planned* to evaluate him for hyperacusis. *Id*. In other words, Pleasant has no evidence that he was diagnosed with hyperacusis at all, and, even if he was latr diagnosed, that condition is an after-acquired impairment that did not impact administration of his Title II claim during the only time period the Cour can consider in this decision. The ALJ's error was harmless.

8. **Why was my VA problem list minimized in some cases ignored by the SSA?**

Pleasant's problem list with the VA increased over the years, well after the date he last was insured for Title II benefits. Therefore, most of his "problems," or impairments, prove irrelevant to his Title II claim.

**9. Why did the SSA say that my medical disability history started in 2019, when it is clear that it started a few years after I entered the Army in 1982?**

The ALJ stated in his decision that the "claimant's *medical evidence of record began in 2019*, which is well after the date last insured for a Title 2 claim." (Tr. 11) (emphasis added). While the record also includes a treatment note from 1997, that note shows that Pleasant's zygomatic arch injury was asymptomatic. (Tr. 174).

**10. Could the Court please remedy this problem?**

This Court only may review the Commissioner's decision for substantial evidence and legal error. Pleasant has not advanced any cognizable argument to support reversal under either ground.

**11. Why did the ALJ say that his ruling is separate and different from others, when it was exactly the same – denial of my claim?**

At the May 23, 2025 hearing in this matter, the ALJ advised Pleasant that he was going to make a "new" decision regarding his claim, by which he meant that his decision was not affected by any of the prior determinations made regarding his current application. *See* Tr. 31. The ALJ did exactly that. While the ALJ ultimately concluded that Pleasant was not disabled for the purpose of his Title II claim, he made that determination based on his *own* review of the evidence and for reasons that differed, in part, from those of the state agency.

**12. Why did the ALJ call on a vocational expert only to ignore her testimony that there would be no work available for someone whose symptoms waxed and waned such that he would miss three to four days of work per month?**

Pleasant correctly observes that the ALJ posed a hypothetical to the vocational expert ("VE") that contemplated an individual who might miss several days of work per month as a result of symptom exacerbation, to which the VE responded that all work would be precluded.

(Tr. 39-40). Ultimately, however, the ALJ did not incorporate this additional limitation into his RFC. A VE's testimony regarding the effects of additional or different limitations, not adopted by the ALJ in his RFC, prove immaterial, so long, as here, his RFC is supported by substantial evidence. *See* discussion, *supra*; *Vaught v. Astrue*, 271 Fed. App'x. 452, 456 (5th Cir. 2008) (plaintiff's argument amounts to a disagreement with the ALJ's RFC, but that determination was supported by substantial evidence). Furthermore, a hypothetical need only reasonably incorporate the disabilities and limitations recognized by the ALJ. *Bowling v. Shalala*, 36 F.3d 431 (5th Cir. 1994). In short, Pleasant's assignment of error lacks merit.

**13. If the VA's description of my total and permanent disability with housebound status is more than what the SSA requires for a finding of disability, why wasn't I granted Title II disability?**

This question/assignment of error represents another version of Pleasant's contention that the VA disability determination should dictate the outcome of his Title II claim. Pleasant is mistaken. *See* discussion, *supra*.

**14. Should a totally and permanently disabled with housebound status that is 100% for mental health deem me disabled and unemployable?**

See response to question/assignment of error No. 13.

The Court further observes that Pleasant attached various documents to his Complaint, comprised of a VA summary of benefits decision dated November 6, 2024, some new treatment records, copies of other treatment records that already appear in the administrative record, plus copies of other documents with handwritten notations apparently made by Pleasant. It is manifest, however, that the role of the courts in reviewing social security appeals is wholly appellate, and, therefore, courts ***may not*** take up new evidence that was not before the Commissioner. *Ellis v. Bowen*, 820 F.2d 682, 684 (5th Cir. 1987); *see also Ferrari v. Astrue*,

435 Fed. App'x. 314, 315 n.4 (5th Cir. 2010) (courts cannot consider new evidence in the first instance). Instead, the only option is to remand the matter to the Commissioner for consideration of the new evidence. *Id*.

To justify remand, however, "the evidence must be (1) new, (2) material, and (3) good cause must be shown for the failure to incorporate the evidence into the record in a prior proceeding." *Bradley v. Bowen*, 809 F.2d 1054, 1058 (5th Cir. 1987) (citing, *inter alia*, 28 U.S.C. § 405(g)). In other words, to justify remand, the evidence must be "new," and not merely cumulative of what is already in the record. *Pierre v. Sullivan,* 884 F.2d 799, 803 (5th Cir. 1989) (citation omitted). The evidence also must be "material"; *i.e*., relevant, probative, and likely to have changed the outcome of the Commissioner's determination. *Id.* Finally, the claimant must demonstrate good cause for not having incorporated the new evidence into the administrative record. *Id.*

Pleasant's new medical records do not satisfy the foregoing criteria. There is no indication that the treatment records reflect Pleasant's impairments during the relevant period, rather than a "later-acquired disability or . . . the subsequent deterioration of the previously non-disabling condition." *Haywood v. Sullivan*, 888 F.2d 1463, 1471-1472 (5th Cir. 1989) (quoting *Johnson v. Heckler*, 767 F.2d 180, 183 (5th Cir. 1985) (internal quotation marks omitted)).

Pleasant also has not suggested any explanation for his failure to incorporate the "new" evidence into the medical record. *Pierre*, 884 at 803 (good cause for remand is not met unless plaintiff provides proper explanation to excuse his failure to submit the evidence earlier). "[T]he mere fact that a medical report is of recent origin is not enough to meet the good cause requirement." *Id*. (citation omitted).

In sum, Pleasant has neither established that the post-decision evidence is material, nor demonstrated good cause for his failure to incorporate the evidence into the administrative record. *Pierre,* 884 F.2d at 803. Accordingly, he is not entitled to remand for consideration of the new evidence. Likewise the remainder of the documents provide no cognizable basis for undermining the Commissioner's determination that Pleasant was not disabled prior to the date he last was insured for Title II benefits.

**Conclusion**

The Commissioner in this case was tasked with determining whether the claimant was disabled. In so doing, he considered the claimant's testimony, the medical record, and expert opinion evidence. According to Pleasant, the evidence should have compelled a different result. However, conflicts in the evidence are for the Commissioner to resolve. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990) (citation omitted); *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971) (citation omitted). This Court may not "reweigh the evidence in the record, try the issues de novo, or substitute its judgment for the Commissioner's, even if the evidence weighs *against* the Commissioner's decision." *Newton*, 209 F.3d at 453. That is not to say that the Commissioner's decision necessarily is blemish-free, but procedural perfection in the administrative process is not required, and any errors do not undermine confidence in the decision. *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988).[5]

For the foregoing reasons, the undersigned finds that the Commissioner's determination that the claimant is not disabled under the Social Security Act, is supported by substantial evidence and remains free of legal error. Accordingly,

[5] Procedural improprieties "constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision." *Morris v. Bowen,* 864 F.2d 333, 334 (5th Cir. 2007).

IT IS RECOMMENDED that the Commissioner's decision be AFFIRMED, in its entirety, and that this civil action be DISMISSED with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before a final ruling issues.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, on this 8th day of September, 2026.

Kayla Dye McClusky

KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE